UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CYNTHIA SCOTT,                           )
                                         )
        Plaintiff,                       )              No. 5:16-CV-108-REW
                                         )
v.                                       )
                                         )        MEMORANDUM OPINION AND
NANCY A. BERRYHILL, Acting               )               ORDER
Commissioner of Social Security,[1]      )
                                         )
        Defendant.                       )

***   ***   ***   ***

Cynthia Scott appeals the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed cross-motions for summary judgment. The Court **GRANTS** the Commissioner's motion (DE #18) and **DENIES** Scott's motion (DE #17) because substantial evidence supports the findings resulting in the administrative decision, and the decision rests on proper legal standards.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Scott is currently 56 years old. *See* R. at 9 (indicating date of birth of 9/6/1960). She alleges disability beginning on March 30, 2008. *See* R. at 207. Scott applied for benefits on September 4, 2012. *Id.* Her claims were initially denied on January 31, 2013, *see* R. at 215-16, and upon reconsideration on May 3, 2013. *See* R. at 229. Scott then filed a written request for a hearing on May 29, 2013. R. at 242-43. Administrative Law Judge ("ALJ") Sheila Lowther held a hearing on the application on July 24, 2014. R. at 262-66. At the hearing, Scott appeared and testified; attorney Amber Eubank represented her. R. at 177-99. Joyce Forrest, an impartial

---

[1] The Court substitutes Nancy A. Berryhill as the current Acting Commissioner of Social Security per Fed. R. Civ. P. 25(d).

1

vocational expert (VE), also testified. R. at 200-05. The ALJ subsequently denied Scott's claims on October 20, 2014. R. at 162-71. The Appeals Council denied review and thus upheld the ALJ's decision on February 23, 2016. R. at 1-4.

The ALJ made several particular findings. She determined that Scott did not engage in substantial gainful activity from March 30, 2008, the alleged onset date, through December 31, 2013, the last date Scott met the Social Security Act's insured status requirements. *See* R. at 167. The ALJ next determined that Scott has a severe impairment: chronic obstructive pulmonary disease. R. at 168. However, ALJ Lowther then found that Scott "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" R. at 169. The ALJ further found that Scott "had the residual functional capacity to perform light work[,]" with some limitations, and "was capable of performing past relevant work as a general accountant and financial advisor." R. at 169-70. "Even if" Scott "could not perform past relevant work," the ALJ found, the VE "identified jobs existing in significant numbers" that Scott could perform. R. at 171. Based on all these considerations, the ALJ determined that Scott "was not under a disability . . . from March 30, 2008, . . . through December 31, 2013[.]" R. at 171. Unsatisfied with the result of the SSA's administrative process, Scott turned to federal district court for review.

## II.     ANALYSIS

### A.     *Standard of Review*

The Court has carefully read the ALJ's full decision and all medical reports it cites. The Court also read and considered the full administrative hearing and record. Judicial review of the ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied

relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or assess questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Commissioner or the ALJ merely because the record contains evidence, even substantial evidence, to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the ALJ's decision if substantial evidence supports it, even if the Court might have decided the case differently. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, when determining disability, conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4). At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110. At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Id.* At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Id.* At Step 4, the

3

ALJ determines RFC and whether the claimant can perform past relevant work. *Id.* The inquiry at this stage is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden of proof shifts to the Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to her interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the SSA's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

B.    *The ALJ did not commit reversible error in her consideration of Scott's impairments.*

First, Scott argues that the ALJ erred by not considering "the symptoms of [her] history of colon cancer, anxiety, depression, and sacroilitis[.]" DE #17-1, at 6. Scott also lists osteopenia, abdominal pain, and plantar fasciitis at various points in the brief. *See id.* at 5; *id.* at 6 ("The ALJ excluded entirely from her review the claimant's documented conditions of plantar fasciitis, osteopenia, abdominal pain, constipation, and diarrhea."). Scott specifically targets alleged ALJ "err[or] at Step Two" concerning identification of severe impairments. *Id.*

4

ALJ Lowther found but one severe impairment: chronic obstructive pulmonary disease (COPD). R. at 168. The ALJ, however, specifically "considered singly and in combination" Scott's "history of colon cancer, anxiety, depression, and sacroilitis[.]" *Id.*[2] Nevertheless, based on the findings of "medical and psychological consultants," the ALJ found that these maladies "did not cause more than minimal limitation in [Scott's] ability to perform basic mental work activities and were therefore nonsevere." *Id.*

The Sixth Circuit has succinctly explained why Scott's argument regarding step two, in the circumstances, has little traction:

> Pompa argues that the ALJ erred by finding that a number of her impairments were not severe under the regulations. However, the ALJ did determine that Pompa had at least one severe impairment. Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps. 20 C.F.R. § 404.1545(e). **Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence. As the ALJ considered all of Pompa's impairments in her residual functional capacity assessment finding, Pompa's argument is without merit.**

*Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) (emphasis added). Here, too, the ALJ found that Scott had at least one severe impairment, and thus (and explicitly) considered all impairments—severe and nonsevere—in the subsequent steps. *See* R. at 169 (noting the ALJ's "careful consideration of the entire record"); *id.* (the ALJ stating she "considered all symptoms"). "[I]t is well settled that[] an ALJ can consider all the evidence without directly addressing in h[er] written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (internal

---

[2] The ALJ's collective reference to these as "mental impairments" is unexplained, but has no impact on the Court's assessment here. *See* R. at 168. The ALJ accounted for all impairments in the overall determination.

alteration omitted). Further, the "ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004).

Indeed, "the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "The fact that" the ALJ deemed some of Scott's impairments nonsevere "at step two is therefore legally irrelevant." *Id.* (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). "The ALJ, therefore, did not commit reversible err in this regard." *Id.*; *see also, e.g.*, *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe.").

Although, per this analysis, ALJ Lowther's determination of only one severe impairment has no legal impact on the case, the Court perceives Scott's argument as one, in reality, generally objecting to the ALJ's RFC determination and overall weighing of the evidence. *See* DE #17-1, at 9 (in the summary paragraph, asserting that the ALJ erred in the RFC determination). On this record, and assessing the argument under this rubric, the Court concludes that substantial evidence supports the ALJ's record evaluation and RFC conclusion.[3]

---

[3] A potential issue of concern for Scott is the fundamental principle that, even if one or a few of the criticisms she presses has some merit, the Court will not necessarily reverse the ALJ. Instead, the Court "will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion," and if any error is harmless. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 648 (6th Cir. 2009). That is—Scott may attempt to flyspeck the decision for misstatements or omissions, but finding one (or some) may not, under the deferential standard of review, necessarily lead to remand or another different result. Additionally, as the Commissioner argues, no single medical source is alone necessary or conclusive on the RFC issue. *See Blakley*, 581 F.3d at 409; *Gayheart*, 710 F.3d at 379 ("To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians."); *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) ("To be sure, the ALJ's decision to give greater weight to [a consultant's] opinion was not, in and of itself, error.").

The record easily belies some of Scott's assertions. For example, Scott argues that the ALJ failed to consider symptoms from colon cancer, DE #17-1, at 6, but the ALJ actually explored cancer symptoms at length: "[Scott] was diagnosed with Stage I colon cancer in August 2012 and immediately underwent resection[.] . . . However, she did not have a recurrence of the cancer, and did not receive chemotherapy or radiation treatment[.]" R. at 168.[4] Same for sacroilitis—"[Scott] was diagnosed with sacroilitis but her treating physician found no adverse musculoskeletal findings on examination through the date she was last insured for benefits[.]" *Id.* The ALJ also specifically noted consideration of anxiety and depression. *Id.* Judge Lowther included a lengthy paragraph analyzing Scott's limitations in daily living, social functioning, concentration, persistence / pace, and general mental well-being. *Id.*

It is true, as Scott argues, that the ALJ did not explicitly mention in her textual analysis plantar fasciitis, osteopenia, abdominal pain, constipation, or diarrhea. DE #17-1, at 6.[5] However, ALJ Lowther affirmed numerous times that she carefully considered "the entire record," "all symptoms," and all "the evidence." R. at 169-70. The ALJ certainly need not "directly address[] in h[er] written decision every piece of evidence submitted by a party." *Kornecky*, 167 F. App'x at 507-08. ALJ Lowther's "failure to cite specific evidence does not indicate that it was not considered." *Simons*, 114 F. App'x at 733.

Apart from ALJ Lowther's assurances that she did consider these (indeed, all) ailments, her comments during the 2014 hearing further confirm that she did so, even if she neglected to

---

[4] Scott later asserts that "the ALJ failed to acknowledge the Plaintiff's severe impairments caused by her colon cancer." DE #17-1, at 8. As discussed, the ALJ's decision not to classify a cancer-related symptom as a "severe impairment" is legally inconsequential, and ALJ Lowther did specifically acknowledge and account for Scott's "history of colon cancer." R. at 168; *see also* DE #17-1, at 8 (agreeing that the "cancer has remained in remission").

[5] The ALJ's focus is perhaps unsurprising, given counsel's opening comments and focus at the ALJ hearing, *see, e.g.*, R. at 180, and Scott's own identification of her "most serious health problem." *See* R. at 184.

mention them specifically in her opinion text. For example, the ALJ affirmatively brought up plantar fasciitis as a conversation topic. R. at 189. She further specifically recognized and discussed Scott's abdominal pain, R. at 187, and diarrhea / constipation, *id.* Thus, with the exception of osteopenia, the ALJ did explicitly acknowledge and address the very conditions about which Scott now complains.[6]

Substantial record evidence supports ALJ Lowther's assessment on all fronts. Dr. Belin's medical history, for example, reveals the cancer diagnosis and resulting treatment, but does not, as the ALJ said, define any level of impairment the cancer caused. R. at 420-29. In fact, Belin (Scott's surgeon) described Scott as "[r]ecuperating nicely . . . post resection[.]" R. at 429; *see also* R. at 450 ("The patient tolerated the procedure well and there were no immediate complications."). As the ALJ indicated, the cancer did not recur post-treatment, and Scott did not undergo chemotherapy or radiation treatment. R. at 598-600, 679.

By the same token, the ALJ reasonably evaluated Scott's sacroilitis. The record contains such a diagnosis, *e.g.*, R. at 632, but Dr. Werkmeister, on the very same page, found no unusual musculoskeletal symptoms. *Id.* This is consistent throughout Werkmeister's treatment of Scott. *See* R. at 477-580. Indeed, the doctor found "no generalized swelling" and prescribed merely some non-specific "exercises" to address the issues. R. at 635. Scott points to no page showing sacroilitis as disabling.

Additionally, although the record certainly reflects Scott's complaints of pain, Dr. Belin, for example, noted that, post-operation, Scott was doing "much better" regarding pain complaints. R. at 464, 607. Dr. Richardson noted only "moderate abdominal pain" with "no

---

[6] Regarding osteopenia, the record does include an isolated notation that a doctor diagnosed "[o]steopenia within the lumbar spine and left hip" in 2013. R. at 703. Scott makes utterly no argument, though, concerning why or how this condition is disabling. Regardless, ALJ Lowther certified that she considered all evidence and the entire record—which includes Dr. Phelps's diagnosis—in the decisional process.

radiation," "no diarrhea," no fever, and "no chest pain." R. at 609. Richardson identified nothing unordinary with Scott, despite her complaints. R. at 609-10 (*e.g.*, "The patient's condition was stable."). Doctors evaluated Scott's abdomen, finding numerous related systems normal and unremarkable. R. at 614 ("clear"; "normal in size"; "normal"; "unremarkable"; "normal in caliber"; "no free fluid or adenopathy"). Dr. Narducci likewise evaluated Scott as a generally normal patient. R. at 680-81; *see also* R. at 687 (diagnosing "a normal colon other than some mildly inflamed internal hemorrhoids"). Dr. Werkmeister reported that Scott had "no side effects" from medication, slept normally, and felt "no overall impact" from her ailments. R. at 480.

Scott also asserts, toward the end of this argument section, that the ALJ erred by discrediting Scott's allegations "as to the intensity, persistence and limiting effects of her symptoms." DE #17-1, at 9. Scott cites no law and no evidence supporting the argument.[7]

---

[7] The parties do not fully address SSR 16-3p's application here. Without the benefit of adversarial briefing, the Court perceives that, in the circumstances and evaluating the weight of the extant district court-level guidance, it is proper to apply SSR 96-7p and the interpreting case law, the ruling and legal guidance in effect at the time of Scott's administrative disability determination. *See, e.g.*, *Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016) (summarizing: "Because the text of SSR 16-3p does not indicate the SSA's intent to apply it retroactively, the Court declines to do so."); *Kitchen v. Colvin*, No. 3:16-cv-20, 2017 WL 395087, at *9 n.4 (M.D. Tenn. Jan. 30, 2017) ("As the ALJ's findings and conclusions were made prior to March 28, 2016, the Court applies SSR 96–7p."); *Strode v. Colvin*, No. 3:12-378, 2016 WL 3580832, at *7 n.3 (M.D. Tenn. June 28, 2016) ("Plaintiff's complaint was filed in April of 2012, however, and thus SSR 96-7p applies to the Court's analysis of this claim."); *see also, e.g.*, *Patterson v. Colvin*, No. 13-cv-1040-JDB-tmp, 2016 WL 7670058, at *7-*9 (W.D. Tenn. Dec. 16, 2016) ("SSR 16-3p does not change the law governing symptom evaluation[.]"). The Sixth Circuit, while declining to reach the retroactivity issue, characterized SSR 16-3p as merely eliminating "the use of the word 'credibility' . . . to 'clarify that subjective symptom evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). The Court perceives the issue to be largely academic here; Scott makes no argument that applying SSR 16-3p over SSR 96-7p would change the outcome. The ALJ evaluated Scott's complaints against the objective medical evidence; she did not judge Scott's character.

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an intangible or intuitive notion about an individual's credibility. Rather, such determinations must find support in the record." *Id.* (internal quotation marks and citation omitted). The "ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (internal citation removed); *see also Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (affording a credibility determination "special deference because the ALJ is in the best position to see and hear the witness and determine credibility").

The ALJ specifically determined that Scott's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. at 170. Although Scott makes no particular argument here, substantial evidence supports the ALJ's assessment of Scott's symptom-related allegations. While the treatment records do indicate some subjective complaints of generalized pain, they consistently also reflect Scott's potential exaggeration of the symptoms. *See, e.g.*, R. at 625-28 (complaining of left foot pain, but denying recalling an injury; describing the pain as "sharp," but behaving "calm" or as if she had "no symptoms"); R. at 624 ("Negative left foot" with "[n]o evidence of . . . abnormality" despite complaints). Werkmeister described an instance of Scott complaining of low back pain as "acute" and of only "moderate dull aching." R. at 630. Werkmeister, in fact, described Scott as continuing to "work[] in the yard" even after some complaints of pain. R. at 636. Dr. Sadler, a state agency physician,

assessed Scott and found her impairments to be non-severe. R. at 226. Dr. Sadler found the impairments, even in combination, to "not significantly limit physical or mental ability to do basic work activities." R. at 228. Dr. Bauer reached a similar conclusion. R. at 214 ("no significan[t] limitations due to her mental impairments"; "[n]ot severe"). Dr. Koul, on a follow-up visit from Werkmeister treatment, took an "unremarkable" echocardiogram, reported that "[h]er examination today is unremarkable," and stated that "[a]t this time it is difficult to pinpoint her symptoms." R. at 659. Similarly, an October 2013 perianal exam and circumferential exam of the colon were "unremarkable." R. at 687-88.

There is clearly substantial record evidence suggesting Scott's course of treatment was generally unremarkable and that her subjective complaints are not of full credibility. R. at 480-500 (indicating Scott "feels well with no complaints, has good energy level and is sleeping well" and that her maladies have had "no overall impact"); R. at 738 ("Impact of disease: no overall impact."). In 2011, for example, when Scott reported a cough, there was "no associated . . . chest pain" or other negative side effect. R. at 503-05. In October 2012, Werkmeister found, for example, no fatigue, headaches, ear pain, sinus pain, sore throat, neck pain, stiffness, chest pain, abdominal pain, muscle weakness, and general weakness. R. at 481. The doctor's findings regarding Scott's body systems were generally normal, a pattern stretching back to 2007. *See generally* R. at 500-80. In sum, "[b]ecause the ALJ considered the evidence in the record and provided specific reasons for h[er] credibility findings, h[er] decision is entitled to great deference and is supported by substantial evidence." *Anthony v. Astrue*, 266 F. App'x 451, 460 (6th Cir. 2008). ALJ Lowther cited to evidence and fully explained the reasons for finding Scott's subjective complaints unreliable. The Court does not second-guess the ALJ's findings on

individual credibility here because they were reasonable and fairly substantiated. *See Bass*, 499 F.3d at 509.

Finally, Scott also makes various suggestions, although she does not develop these arguments in any meaningful way, regarding the VE's testimony. Particularly, as best as the Court can tell, Scott is unsatisfied with the ALJ's refusal to use the result of the 3-extra-bathroom-breaks hypothetical. DE #17-1, at 8-9; R. at 203.

VE testimony can be substantial evidence supporting the ALJ's decision. *Felisky v. Bowen*, 35 F.3d 1027, 1035-36 (6th Cir. 1994). Here, in response to the first two hypotheticals, the VE testified that Scott could return to her past work, as well as other sedentary semiskilled and unskilled jobs that exist in significant numbers in the regional and national economies. R. at 201-03. Scott challenges nothing about those hypotheticals. Only when the ALJ posed the 3-bathroom-breaks hypothetical did the VE opine that "there would be no jobs." R. at 203.

As an initial matter, Scott points to no evidence establishing that the ALJ's nonreliance on the 3-bathroom-breaks hypothetical was error, and the Court rejects this argument on that basis alone. *See* General Order 13-7, at ¶ 3(c) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments. Failure to provide specific citations to the record may constitute grounds for denial of the motion."). Regardless, substantial evidence indicates that Scott in fact does not require such a bathroom-break schedule, rendering the hypothetical divorced from the record and thus inconsequential. *See, e.g.*, R. at 609 ("no diarrhea"; "no history of urinary symptoms"); R. at 466 (noting, soon post-operation, that Scott "well tolerated" her post-operative diet with a normal "return of bowel function"); R. at 481 (noting no abdominal pain, constipation, diarrhea,

12

hematemesis, or vomiting); R. at 743 ("Bowel sounds normal."). Indeed, the Court has explored the record and sees no diagnosis or requirement of such restroom-use frequency. Scott points to none; even Scott's own testimony was not to that effect. Not relying on the 3-bathroom-breaks hypothetical was, accordingly, proper, and the Court therefore declines to reverse the ALJ's reliance on the VE's testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In sum, substantial evidence supports the ALJ's decision. ALJ Lowther carefully evaluated the record, provided specific reasons for her decision, and defensibly evaluated the evidence. Scott essentially requests the Court do what it cannot: "try the case de novo" and otherwise reweigh the evidence. *See Bass*, 499 F.3d at 509. The Court does not reverse the ALJ in these circumstances—even on a record that theoretically contains substantial evidence to support opposite conclusions. *Warner*, 375 F.3d at 390.

     C.    *The ALJ did not commit reversible error in her assignment of weight to Dr. Werkmeister's January 2014 assessment.*

Second, Scott contends that the ALJ "failed to give appropriate weight to the medical opinion of [her] long-time treating primary care physician." DE #17-1, at 10. ALJ Lowther held that Scott's primary care provider's statement that Claimant "was extremely limited mentally" was "not entitled to any weight because . . . the limitations are based on the claimant's report" and was "inconsistent with the weight of the evidence and [the doctor's] own findings[.]" R. at 168. Additionally, the ALJ discounted the doctor's statement of extreme limitations as "not entitled to any weight because it is inconsistent with the treating record, inconsistent with the doctor's own objective findings, inconsistent with the other medical evidence, and appears to be based solely on [Scott's] subjective complaints[.]" R. at 170.

13

"An ALJ gives 'controlling weight' to a treating physician's opinion if the opinion 'is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 808-09 (6th Cir. 2012) (quoting 20 C.F.R. § 404.1527(d), (d)(2)). The Sixth Circuit has stated the contours of the treating physician rule:

> The agency promises claimants that it will give more weight to the opinions of treating sources than to non-treating sources. 20 C.F.R. § 404.1527(d). The opinions of treating physicians carry more weight because they likely provide 'a detailed, longitudinal picture' of the claimant's medical impairment(s) that cannot be obtained from objective medical findings alone or from reports of consultants' examinations. [*Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).] An ALJ must give a treating source opinion concerning the nature and severity of the claimant's impairment controlling weight if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence' in the record. 20 C.F.R. § 404.1527(d)(2); *Blakley,* 581 F.3d at 406. However, a doctor's opinion that a patient is disabled from all work may invade the ultimate disability issue reserved to the Commissioner and, while such an opinion could still be considered, it could 'never be entitled to controlling weight or given special significance.' SSR 96-5p. 1996 WL 374183, at *5 (July 2, 1996) ('Medical sources often offer opinions about whether an individual . . . is disabled or unable to work[.] . . . Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner.'); 20 C.F.R. § 404.1527(e)(1).
>
> If the ALJ decides not to give a treating physician's opinion controlling weight, the ALJ may not reject the opinion but must apply other factors to determine what weight to give the opinion, such as 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source[.]' *Wilson*, 378 F.3d at 544 (citing § 404.1527(d)(2)). If benefits are denied, the ALJ must give 'specific reasons for the weight given to the treating source's medial opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); [*Rogers*, 486 F.3d at 242] (citing Rule 96-2p for the proposition that all cases carry a rebuttable presumption that a treating physician's opinion 'is entitled to great deference, its non-controlling status notwithstanding').

*Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 437 (6th Cir. 2013).

Thus, to justify giving a treating physician's opinion "less than controlling weight," the ALJ must state "good reasons." *Id.* "'Good reasons'" are those "'supported by the evidence in the case record'" and "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight.'" *Melton v. Astrue*, No. 11-305-KSF, 2012 WL 1933731, at *3 (E.D. Ky. May 29, 2012) (quoting *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011)). If the ALJ fails to articulate good reasons for rejecting the treating physician's opinion, the reviewing court must reverse and remand to the Commissioner, "even if substantial evidence otherwise exists in the record to support the Commissioner's decision." *Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009); *see also Wilson*, 378 F.3d at 543 ("Because the ALJ, by failing to articulate reasons for discounting the opinion of Wilson's treating physician, violated the agency's own procedural regulation, we vacate the judgment of the district court affirming the ALJ decision and remand for further proceedings consistent with this opinion.").

Here, the ALJ stated good reasons for discounting the treating physician's opinion. She gave four reasons: Werkmeister's January 2014 opinion was (1) "inconsistent with the treating record"; (2) "inconsistent with [his] own objective findings"; (3) "inconsistent with the other medical evidence"; and (4) "based solely on [Scott's] subjective complaints[.]" R. at 170.

*First*—regarding the first 3 reasons, the ALJ's assessment is spot on.[8] Werkmeister's own records contradict his January 2014 findings of moderate to severe pain, extreme limitations, and

---

[8] The Court notes that Scott, in her brief, cites to exceedingly little record proof to support this argument outside Werkmeister's January 2014 report itself, the lone exceptions being a notation of osteopenia (R. at 703) and a diagnosis of various foot symptoms (R. at 716). A lower-than-average bone density says nothing specific about pain or disability, and Zimmermann's various diagnoses do not speak to any associated pain or disability level, outside of what Scott herself "complain[ed] of[.]" *See* R. at 716. Zimmermann's reports also indicate significantly varying levels of subjective pain. *See id.* (4/30/14: "less pain per [patient]"; 5/29/14: "complaining of continued pain on the bottom of her heel. It is not any better."). Scott was, though, objectively

the like. *See, e.g.*, R. at 480-500 (indicating Scott "feels well with no complaints, has good energy level and is sleeping well" and that her maladies have had "no overall impact"). The records from 2012 show a patient progressing normally, with none of the extreme symptoms Werkmeister identified in 2014. When, in 2011, for example, Scott reported a cough, there was "no associated . . . chest pain" or other negative side effect. R. at 503-05. In October 2012, Werkmeister found no fatigue, headaches, ear pain, sinus pain, sore throat, neck pain, stiffness, chest pain, abdominal pain, muscle weakness, and general weakness. R. at 481. Werkmeister's findings regarding Scott's body systems were generally normal, consistent from 2007 onward. *See generally* R. at 500-80.

The January 2014 assessment is also inconsistent with other medical proof in the record, as discussed extensively in Part II.B. For example, in 2013, an objective pulmonary function test of Scott's COPD indicated that the disease was "mild." R. at 581-85. Surgeon Dr. Belin, in 2013, found "[n]o evidence of recurrent disease based on today's physical exam and proctoscopy." R. at 600. While the records indicate some subjective complaints of generalized pain, they also reflect Scott's complaints not matching medical reality. *See, e.g.*, R. at 624-28 (complaining of left foot pain, but denying recalling an injury; describing the pain as "sharp," but behaving "calm" or as if she had "no symptoms"; medically "negative" with "no evidence of . . . abnormality" despite complaints). The Court incorporates its prior discussion:

> Werkmeister described an instance of Scott complaining of low back pain as "acute" and of only "moderate dull aching." R. at 630. Werkmeister, in fact, described Scott as continuing to "work[] in the yard" even after some complaints of pain. R. at 636. Dr. Sadler, a state agency physician, assessed Scott and found her impairments to be non-severe. R. at 226. Dr. Sadler found the impairments, even in combination, to "not significantly limit physical or mental ability to do

_____

(despite her complaints) "negative" for left foot pain. R. at 624. Scott also misdescribes the ALJ's opinion, arguing that ALJ Lowther "gave no weight to the state-agency medical consultant[.]" DE #17-1, at 12. That is inaccurate. The ALJ gave the consultant's conclusion "little weight." R. at 170.

basic work activities." R. at 228. Dr. Bauer reached a similar conclusion. R. at 214 ("no significan[t] limitations due to her mental impairments"; "[n]ot severe"). Dr. Koul, on a follow-up visit from Werkmeister treatment, took an "unremarkable" echocardiogram, reported that "[h]er examination today is unremarkable," and stated that "[a]t this time it is difficult to pinpoint her symptoms." R. at 659. Similarly, an October 2013 perianal exam and circumferential exam of the colon were "unremarkable." R. at 687-88.

*See infra* Part II.B. Werkmeister's July 2013 evaluation records a generally normal patient, noting none of the symptoms he reported in 2014. R. at 630-35.

In sum, just as the ALJ perceived, Werkmeister's January 2014 assessment arguably was inconsistent with his own objective findings, other medical evidence, and the general treating record. These are good reasons to discredit it. *See, e.g.*, *Blakley*, 581 F.3d at 406.

*Second*—Werkmeister, as the ALJ found, based his key opinions (R. at 704-10) exclusively on Scott's subjective complaints. He said so at least 6 times, in specifically added handwritten notations: R. at 705 ("per patient reports"); R. at 706 ("'I can't' per patient"); R. at 707 ("all per patient's reports"); R. at 708 ("all per patient reports"); R. at 709 ("per patient report"); R. at 710 ("Patient stated that I can't work!"). "A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule." *Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009). Dr. Werkmeister basically abdicated his own professional assessment and yielded to Scott to supply the answers. It is one thing to take account of a patient's answers, but quite another to supplant medical expertise with a patient's biased self-view on the key indicia of disability. Additionally, as the Court explained above, there is substantial evidence supporting the ALJ's general discounting of Scott's subjective complaints. Thus, the ALJ reasonably and correctly assessed and discounted Werkmeister's parroted opinion.

**III.     CONCLUSION**

For the reasons stated, the Court **GRANTS** the Commissioner's motion for summary judgment (DE #18) and **DENIES** Scott's motion for summary judgment (DE #17). The Court will enter a separate Judgment.

This the 3d day of March, 2017.

Signed By:

Robert E. Wier

United States Magistrate Judge